UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,

                                         Case No. 15-20652

vs.

                                         HON. GEORGE CARAM STEEH

BILLY ARNOLD (D-1),
ROBERT BROWN (D-6),
JEROME GOOCH (D-7),
MICHAEL ROGERS (D-8)
DEVON PATTERSON (D-10),
JEFFERY ADAMS (D-12),

               Defendants.
_____/

OPINION AND ORDER DENYING DEFENDANTS'
MOTION TO SUPPRESS FACEBOOK EVIDENCE [DOC. 581 & 582]

     This matter is before the court on defendants Billy Arnold's and

Jeffery Adams' motions to suppress Facebook evidence (docs. 581 & 582).

Arnold's motion was joined in by defendants Robert Brown, Michael

Rogers, and Devon Patterson.  Adams' motion was joined in by defendants

Robert Brown, Jerome Gooch, Michael Rogers and Devon Patterson.

     The court held oral argument on the motion on August 31, 2017.  For

the reasons stated in this order, as well as those stated on the record,

defendant's motion to suppress is DENIED.

- 1 -

I.    Facts

On November 12, 2015, Magistrate Judge Majzoub issued a search and seizure warrant for the records of 42 Facebook accounts based upon the Affidavit of Border Agent Shawn Horvath.  The warrant authorized the government's seizure of Facebook account information "that constitutes fruits, evidence, and instrumentalities of violations of" the RICO Act, Violent Crimes in Aid of Racketeering, Felon in Possession of Firearm, Use of Firearm in Furtherance of a Crime of Violence and distribution, possession and conspiracy to distribute controlled substances.  Agent Horvath served the warrant and Facebook produced the evidence requested.  According to the government, the production contained pictures of defendants involved in SMB activity and evidence relevant to the prosecution of the RICO conspiracy.

Agent Horvath's Affidavit outlines his experience in investigating gangs in general and his experience in observing their use of social media in furtherance of their organizations.  Horvath describes the SMB's use of Facebook to post photographs and videos of gang colors, hand signs, memorials to dead friends, their organization and firearms and narcotics.  (Affidavit ¶ 20).

Paragraph 51 of Horvath's Affidavit refers to Account 23 which belongs to Jeffery Adams.  The Account accessible to the public is said to

- 2 -

contain 2 pictures of former SMB members, 1 picture of a current member, pictures of codeine bottles, "55" and "Blood Day," and a posting that someone is a federal informant. The Account is averred to have "social media correlations" with other accounts for which the warrant was being sought. The affiant states that "The Seven Mile Bloods use liquid codeine and alcohol combined to create a drink they refer to as 'SIZZRUP.'"

Paragraph 57 of Horvath's Affidavit refers to Account 29, which belongs to Billy Arnold. The portion of the Account assessable to the public contains pictures of Billy Arnold, including Arnold wearing a red and black shirt with "55" on the front, which is consistent with the SMB/Hob Squad. The Account is averred to have "social media correlations" with other accounts for which the warrant was being sought. Horvath states that "a federal search warrant in October of 2015 was issued on four cell phones recovered during the arrest of ARNOLD. It was found through data extraction that these phones were being used to upload pictures of weapons and post gang related material to Facebook."

II.    Analysis

A.    Search Warrant Affidavit Must Establish Probable Cause

Defendants correctly argue that an affidavit in support of a search warrant must contain facts establishing that evidence of illegal activity will likely be found in the place to be searched. Defendants also emphasize

- 3 -

that membership in a gang is not illegal.  Despite this well-established law, defendants complain that Agent Horvath combined 42 Facebook accounts into a single search warrant and Affidavit, and failed to allege facts that were sufficient to establish that Accounts 23 and 29 would contain evidence of the specified criminal activity.  Defendants argue that, other than alleging that the Accounts were associated with or belonged to members of SMB, there is nothing to indicate that evidence of a crime would be found on these particular Facebook pages.

A search warrant is valid if probable cause exists to support its issuance.  To evaluate probable cause, courts are instructed "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [it] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  The facts and circumstances taken as a whole must give the magistrate probable cause to believe the items sought would be found during the search.  *See, id., Zurcher v. Stanford Daily*, 436 U.S. 547, 566 (1978).  "[R]eviewing courts are to accord the magistrate's [probable cause] determination great deference."  *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000).  Once a magistrate has determined the existence of probable cause, that

decision should only be reversed if it was arbitrarily made.  *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006).

The government maintains that the facts set forth in Horvath's Affidavit establish that there was a "fair probability" that a search of the defendants' private Facebook records would, at the very least, provide evidence of the defendant's membership and willing participation in SMB as well as evidence of conspirators' predicate offenses.  After setting forth his education, training and experience in gang investigations, Horvath detailed his involvement in the investigation into the SMB enterprise.  He then explained why there was a fair probability that evidence of criminality would be found.  He averred that evidence gathered from interviews, police reports, and other sources reveal that SMB is a criminal enterprise engaged in conspiracies to commit federal and state criminal offenses, including violent ones.  Horvath explained that SMB derives its income from the sale of illegal narcotics, robberies, and a variety of other criminal methods.

Horvath stated that certain Facebook accounts, including Accounts 23 and 29, had been identified to belong to members or associates of SMB. Based on his experience and investigation, "[s]ocial media outlets are used as a means by some gang members to take credit for violent incidents, communicate with one another about their criminal behavior, and promote

the gang"; that "gang members will post on social media sites to inform others about their criminal activities"; that "most members are known by street names or monikers to their fellow gang members" and "these monikers are often used as, or incorporated into, the accounts and user names of social media sites used by gang members."  (Aff. at 6-7).  Horvath then made specific observations about each Account, set forth in the Fact section above.

The government contends that the Affidavit reasonably suggests that defendants were active members of SMB, promoted the enterprise and its objectives, and used Facebook to do so.  Account 23 had correlations with at least 17 other Facebook accounts belonging to alleged SMB conspirators, and Account 29 had correlations with at least 9 other Facebook accounts belonging to alleged SMB conspirators.  Agent Horvath's Affidavit proffered details that connect the Accounts' public postings to the SMBs.  The content of the public accounts leads rationally to the conclusion that the private accounts contain similar or even more inculpatory evidence.  The fact that the defendants used their Facebook Accounts to communicate with other alleged SMB members makes it reasonably likely that Accounts 23 and 29 would contain evidence of the RICO conspiracy and membership in the enterprise.  For example, defendant Adams is Facebook friends with Account 3, which had pictures

of drugs and guns on its public access.  Adams and Arnold both had a social media correlation with Account 8, which publicly posted rap videos glorifying SMB criminal behavior and taunting rival gangs.

Defendants take issue with the fact that Horvath makes no allegation that anything posted in the Accounts is illegal.  Defendants cite to *United States v. Bethel*, 245 F. App'x 460 (6th Cir. 2007), wherein the Court found that a search warrant affidavit did not establish probable cause to search a defendant's residence for drugs or weapons simply because the defendant lived there.  *Id.* at 468-69 ("In this case, the affidavit only contained information connecting the [defendant] to two shootings; it did not include any facts connecting him to drugs or to weapons at his home other than his alleged status as a gang member and known acquaintance of [others] who reportedly kept drugs and guns in *their* residence").

In this case, the illegal activity the government believes it will find on the private Facebook Accounts is evidence of membership in a criminal enterprise engaged in RICO conspiracy, as well as evidence of predicate offenses by SMB members.  An element of Count One of the government's RICO conspiracy case that they will have to prove at trial is the existence of an association-in-fact enterprise. This charge requires proof of "a continuing unit that functions with a common purpose."  *Boyle v. United States*, 556 U.S. 938, 948 (2009).  The fact that the defendants posted

photographs of themselves wearing gang clothing or posted statements that acknowledge the existence of, and their involvement with, the Seven Mile Bloods, their various monikers such as "55", or statements referring to fellow co-conspirators by their gang names can be used by the government to demonstrate that this enterprise exists.  The averment that gangs, including the SMB gang, use social media to communicate with one another about their criminal activities, differentiates the search warrant Affidavit in this case from *Bethel*.  The nature of social media is that it connects people.  Importantly, the owner of a Facebook account must grant others access to his or her private postings.  Under the totality of the circumstances, the Court finds the search warrant is supported by probable cause.

B.    Good Faith Exception

Even if the court were to find that the search warrant lacked probable cause, the exclusionary rule does not apply where the law enforcement officers executing the search warrant acted in good faith in relying on the search warrant.  *United States v. Leon*, 468 U.S. 897, 922 (6th Cir. 1984). The *Leon* case describes four situations where an officer's reliance on an invalid warrant cannot be considered objectively reasonable:

> (1) When the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing)

contains false information; (2) when the issuing
magistrate abandons his neutral and detached role and
serves as a rubber stamp for police activities; (3) when
the affidavit is so lacking in indicia or probable cause that
a belief in its existence is objectively unreasonable; and
(4) when the warrant is so facially deficient that it cannot
reasonably be presumed to be valid.

*Id.* at 914-15.

The Supreme Court has held that lower courts determining whether
to exclude evidence should use a cost-benefit analysis focused on the
flagrancy of police misconduct. *Davis v. United States*, 564 U.S. 229, 238
(2011).  Evidence should not be excluded "to deter police misconduct
unless the officers engage in deliberate, reckless, or grossly negligent
conduct." *United States v. Master*, 614 F.3d 236, 243 (6th Cir. 2010)
(citation omitted); *see also United States v. Powell*, 847 F.3d 760, 772 (6th
Cir. 2017).

The search warrant application was not so lacking in indicia of
probable cause as to render reliance on the warrant entirely unreasonable.
A neutral and detached magistrate judge reviewed and signed the detailed
warrant application.  Moreover, there is no evidence that Agent Horvath
engaged in the type of "deliberate, reckless, or grossly negligent conduct"
that the courts have found warranted suppression of evidence.  If probable
cause is later found not to support the search warrant issued in this case,
the court finds that the goof faith exception to the exclusionary rule applies.

- 9 -

C.    Search Warrant Affidavit Provided Under Oath

Defendants allege that the fruits of the search warrant should be suppressed because Agent Horvath did not sign the Affidavit supporting the search warrant application, thereby violating the Fourth Amendment's Oath or Affirmation requirement.  However, the government submits Exhibit 4, which is a true copy of the original signature page showing that Agent Horvath did sign the Affidavit.  The affidavit provided to the defendants in discovery was redacted and did not include the agent's signature.  At oral argument, defendants' counsel withdrew this objection to the Affidavit.

III.   Conclusion

Defendants' Motion to Suppress Facebook Evidence is DENIED.

Dated:  September 13, 2017

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on September 13, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---