UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

                Plaintiff,                           Case No. 2:15-cr-20652-06

v.                                             Hon. George Caram Steeh

ROBERT BROWN, II (D-6)

                Defendant.
_____/

U.S. Attorney's Office                 James L. Feinberg (P13341)
211 W. Fort Street, Suite 2001       28411 Northwestern Highway
Detroit, MI 48226                     Suite 875
                                    Southfield, MI 48034
                                    (248) 353-0600
                                    jlfdefense@mindspring.com

## MOTION AND INCORPORATED MEMORANDUM OF LAW FOR JUDGMENT OF ACQUITTAL PURSUANT TO FRCRP RULE 29(A)

## I.      INTRODUCTION

           The Defendant asks for acquittal on the RICO and VCAR counts against him because of a fundamental failure of proof which arises from the Government's strained efforts to convert alleged independent violent state crimes into federal offenses. Even though *Boyle v. United States,* 556 US 538 (2009), allows a finding of a racketeering enterprise structure merely from the acts which may comprise a pattern of racketeering activity, evidence of a certain amount of organizational structure is still required. *Ouwinga v. Benistar 419 Plan Services Inc.,* 694 F3d 783 (6th Cir. 2012). The Government's evidence does not meet that standard, even when viewed under the deferential rules the court is require to use in considering this motion.

This failure of proof is further evident in the lack of evidence to connect the alleged state offenses to the Count One racketeering enterprise allegation; and it is evident in the failure of proof to establish the required connection of that racketeering enterprise to interstate commerce. "Recent precedent in the Supreme Court and the Sixth Circuit emphasize that the prosecution and punishment for these crimes must be undertaken by the States, however, and that the federal government exceeds its jurisdiction when it steps in this manner into the arena of local non-economic violent crime." *United States v. Garcia,* 143 F Supp 2d 791, 817 (ED Mich. 2000)(Edmunds, N.). This lack of evidence is reason to conclude that the Government has failed to present sufficient evidence to permit these counts to be submitted to the jury.

## II.     STATEMENT OF FACTS

### A.  The Indictment

The Government filed a Sixth Superseding Indictment on January 3, 2018.

### 1.      RICO CONSPIRACY
(Count One)

Count One charges that a conspiracy in violation of 18 U.S.C. § 1962(d) began in 2003 and continued until the date of the indictment.

### 2.      MURDER AND ATTEMPTED MURDER IN AID OF RACKETEERING
(Counts Two and Count Twenty-Five)

Each of these counts charges the defendant with either the offense of murder in the aid of racketeering in violation of 18 U.S.C. § 1959(a)(1) or attempted murder in aid of racketeering in violation of 18 U.S.C. §§ 1959(a)(5);2.

These counts allege that Brown and others names in the indictment were members and associates of the racketeering enterprise in Count One, the Seven Mile Bloods, a

group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce.

Count Two alleges on or about June 7, 2006, Brown did, for the purpose of maintaining and increasing position in the Seven Mile Bloods, an enterprise engaged in racketeering activity, knowingly and unlawfully murder C.M., in violation of MCL 750.316(1).

Count Twenty-Five alleges on or about May 10, 2015, that Brown aided and abetted for the purpose of maintaining and increasing position in the Seven Mile Bloods, did knowingly, intentionally, and unlawfully attempt to murder Derrick Peterson, Darnell Canady, and Jason Gaskin in violation of MCL 750.83 and MCL 767.39.

All in violation of 18 U.S.C., § 1959(a)(1).

**3.     USE OF A FIREARM IN FURTHERANCE OF A CRIME OF VIOLENCE CAUSING DEATH**
(Count Three)

Count Three alleges on or about June 7, 2006, Brown did knowingly, and unlawfully carry and use a firearm, and caused the death of C.M. in violation of 18 U.S.C §§ 924(c);924(j).

**4.     ASSAULT WITH A DANGEROUS WEAPON IN AID OF RACKETEERING**
(Count Twenty-Six)

Count Twenty-Six alleges on or about May 10, 2015, Brown aided and abetted for the purpose of maintaining and increasing position in the Seven Mile Bloods knowingly and unlawfully assault D.P, D.C., and J.G. with a dangerous weapon in violation of MCL 750.82 and MCL 767.39

All in violation of 18 U.S.C. 1959(a)(3);2.

5.    **USE AND CARRY OF A FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE**
(Count Twenty-Seven)

Count Twenty-Seven alleges that on or about May 10, 2015, Brown did knowingly, intentionally, and unlawfully carry and use a firearm during and in relation to a crime of violence, that is, attempted murder and assault with a dangerous weapon in aid of racketeering, alleged in County Twenty-Five and Twenty-Six, and said firearm was discharged, in violation of 18 U.S.C. §§ 924(c);2.

6.    **POSESSION OF A FIREARM IN FURTHURANCE OF A CRIME OF VIOLENCE**
(Count Thirty-Two)

Count Thirty-Two alleges that defendants including Brown did aid and abet each other and others, and did knowingly, intentionally, and unlawfully, possessed firearms in furtherance of a crime of violence, that is, racketeering conspiracy as alleged in Count One; in violation of 18 U.S.C. §§ 924(c);2.

**RACKETEERING ENTERPRISE**

The racketeering enterprise allegation is the core of these charges. It is set out in Paragraphs 1 through 11 of Count One in the indictment. Count One, Paragraph 1 names the racketeering enterprise the "Seven Mile Bloods". Paragraph 8 describes, in generic terms, general purposes of the racketeering enterprise.

In furtherance of the conspiracy, and to affect the object and purposes thereof, the Defendant, Brown allegedly committed various over acts including:

#29: On 4/11/15 Brown and other SMB enterprise members assaulted Dwayne Thomas and took Dwayne Thomas' shoes, phone, and other property.

## III.     ARGUMENT

### A.     LEGAL STANDARD

It is beyond dispute that "[a] defendant bears a heavy burden is sufficiency of the evidence challenge." *United States v. Davis,* 577 F3d 660 (6th Cir. 2009). The court must "view the evidence in the light most favorable to the government and draw all reasonable inferences in the government's favor." *United States v. Gibson,* 675 F2d 825, 829, (6th Cir. 1982). The court then "must determine credibility, weigh the evidence and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *United States v. Curley,* 160 F2d 229, 232-34 (DC Cir. 1947); *Jackson v. Virginia,* 443 US 307, 319 (1979).

A motion for judgment of acquittal must be granted if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt. *United States v. Fawaz,* 881 F2d 259, 261 (6th Cir. 1989).

### B.     REASONS WHY THIS COURT SHOULD GRANT ACQUITTAL ON RICO CONSPIRACY (COUNT ONE) AND VCAR (COUNTS TWO, THREE, TWENTY-FIVE, TWENTY-SIX, TWENTY-SEVEN, and THIRTY-TWO)

### 1.     THERE HAS BEEN A FAILURE OF PROOF OF THE RACKETEERING ENTERPRISE AS ALLEGED

The existence of the racketeering enterprise is a required element of the RICO conspiracy offense charged in Count One.

> RICO makes it "unlawful for a person employed by or associated with any racketeering enterprise engaged in, or the activities of which affect, interstate of foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such racketeering enterprise's affairs through a

pattern of racketeering activity or collection of
unlawful debt." 18 U.S.C.§ 1962(c).

An association-in-fact racketeering enterprise, as alleged in the present indictment must
be "a continuing unit that functions with a common purpose. *United States v. Turkette,* 452 U.S.
576(1981). According to *Boyle,* it must have at least three structural features: "a purpose,
relationships among those associated with the racketeering enterprise, and longevity sufficient to
permit these associates to pursue the racketeering enterprises' purpose." 556 U.S. at 946. It is
also required that there must be evidence that the alleged structure exists as a separate element.
*Id.* at 947. In *Boyle*, the Court made clear that its holding in *Turkette,* 452 U.S., at 583, that "the
existence of a racketeering enterprise is an element distinct from the pattern of racketeering
activity and 'proof one does not necessarily establish the other,'" is still the law. 556 U.S. 947.
More recently, in *Ouwinga v. Benistar 419 Plan Services Inc.* 694 F3d 783, 794 (6th Cir. 2012)
the Court explained that an association-in-fact racketeering enterprise "require[s] a certain
amount of organizational structure which eliminates simple conspiracies from the Act's reach.
*VanDenBroeck v. CommonPoint Mortg.Co.,* F3d 696. 699 (6th Cir. 2000)."

The evidence was insufficient to meet these standards.

The Government has alleged a single unified racketeering enterprise from 2003- when the
indictment was filed. The evidence shows there were relationships among small clusters of
friends and relatives. This is insufficient to establish the racketeering enterprise alleged in the
indictment. *United States v. Morales*m 185 F3d 74(2nd Cir. 1999)

2.      **THERE IS A FAILURE OF PROOF OF A NECESSARY
        RELATIONSHIOP OF ALLEGED ACTS OF RACKETEERING
        ACTIVITY AND THE RACKETEERING ENTERPRISE**

It is also required that alleged racketeering acts must be related to the illegal
purpose of the racketeering enterprise. *United States v. Corrado,* 227 F3d, 543, 554 (6th Cir.

2000); *Sedima S.P.R.L. v. Imrex* 473 U.S. 479, 496 (1985). That is, the defendant must be enabled to commit the racketeering acts solely by virtue of his relationship to the racketeering enterprise or because the offense was related to the activities of the racketeering enterprise. *United States v. Lawson,* 535 F3d 434 (6th Cir. 2008). Courts have interpreted these requirements to mean that a defendant must use a "racketeering enterprise to engage in a pattern of racketeering activity." *Jay E. Hayden Foundation v. First Neighbor Bank, N.A.* 610 F3d 382, 388-389 (7th Cir. 2010).

There is no evidence that the alleged VCAR murders were "enabled" by the racketeering enterprise described in the indictment.

### 3. THERE IS FAILURE TO PROVE A RICO MOTIVE FOR EACH VCAR COUNT

A central issue for each of these counts is whether a reasonable fact finder can conclude from the record evidence that the defendants' "general purpose" in shooting the named victim "was to maintain or increase his position in the racketeering enterprise." *United States v. Thai,* 29 F3d 785, 817 (2nd Cir. 1994). Put another way, can the jury reasonably conclude that the defendant committed the violent crime because "he knew it was expected of him by reason of his membership in the racketeering enterprise of that he committed it in furtherance of that membership." *Id.*

In order to establish a direct violation of 18 U.S.C. § 1959, the Government must prove beyond a reasonable doubt that: (1) there was a RICO racketeering enterprise; (2) the racketeering was engaged in racketeering activity as defined in RICO; (3) the defendant in question had a position in the racketeering enterprise; (4) the defendant committed the alleged

crime of violence; and (5) his general purpose in so doing was to maintain or increase his position in the racketeering enterprise. *United States v. Concepcion,* 983 F2d 369 (2nd Cir. 1992).

The statue also requires that the prescribed violent act must have been committed "as an integral aspect of membership" in the racketeering enterprise. S.Rep.N.O. 225, 304, reprinted in 1984 USCCAN at 3483. While commission of a violent crime act may not have been the defendant's sole or principle motive, the evidence must support an inference that "the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the racketeering enterprise or that he committed it in furtherance of that membership." *Concepcion, supra,* at 381. That is, the violent act must have been committed "as an integral aspect of membership in the racketeering enterprise." *United States v. Thai,* 29 F3d 785, 817 (2nd Cir. 1994).

The purpose element of VCAR does not require defendant to be *solely* motivated by desire to increase status within the organization, but a defendant's purpose must be more than merely incidental. In *United States v. Banks,* 514 F3d 959, 969-970 (9th Cir. 2008), the Court explained:

> [A]lthough the law does not require that the defendant's gang-related purpose be his primary or sole purpose, it does require that his purpose be more than merely incidental: It must be within his "general" purpose, or, in the alternative, the violence committed must be in some way "integral" to the defendant's membership in the gang.
>
> Although we think the question is a close one, we conclude that the instructions given by the district court here were erroneous because they permitted the jury to convict Banks on the VCAR counts even if it found that his battle with Gilmore was generally motivated by personal animosity and by desire to regain the respect and affection of his girlfriend, so long as the jury also found some incidental purpose to maintain his position in the gang. By permitting the jury to find only that Bank's desire to maintain or enhance his status in the gang was "one of" of "at least one of" his purposes or "at least in part" due to his membership in the gang, the district court ran the risk that the jury would focus not on Bank's general purpose in committing these crimes and its relationship to his status in the gang, but merely on his status as a gang member. Given that status, the jury could

easily infer that he acted "at least in part" to enhance his membership status within the gang.

We are persuaded that VCAR requires more than this. People often act with mixed motives, so the gang or racketeering enterprise purpose does not have to be the only purpose or the main purpose of the murder or assault. But it does have to be a substantial purpose. Murder while a gang member is not necessarily a murder for the purpose of maintaining or increasing position in a gang, even if it would have the effect of maintaining or increasing position in a gang. ***By limiting the statute's scope to those cases in which the jury finds that one of the defendant's general purposes or dominant purposes was to enhance his status or that the violent act was committed "as an integral aspect" of gang membership, we ensure that the statute is given its full scope, without allowing it to be used to turn ever criminal act by a gang member into a federal crime.***
(Emphasis added.)

Stated differently, it is the Government's burden to establish evidence from which reasonable minds can conclude the existence of a racketeering enterprise related motive. *United States v. Jones,* 291 F Supp 2d 78 (D CT, 2003). In *Jones,* the district court granted the defendant's motion for judgment of acquittal. The central issue posed by Jones' Rule 29 motion was whether the "general purpose in committing a murder was to maintain or increase his position in the racketeering enterprise." *Id.* at 85.

Jones was the leader of a violent drug distribution gang in a Connecticut public housing complex called P.T. Barnum. He was tried on RICO and VCAR murder counts. According to the district court opinion granting his acquittal after the jury verdict against him, there was overwhelming evidence presented at his trial that he was the leader of an organization characterized by an organizational hierarchy and use of firearms to commit violent acts. There was also evidence presented from cooperating witnesses that "obtaining and maintaining "respect" were essential elements for any drug organization that operated in the marketplace at P.T. Barnum;" *Jones, supra* at 81, and "undisputed evidence that Jones, as leader of his racketeering enterprise, earned and commanded respect throughout P.T. Barnum. *Id.* The court

noted as well that "to gain and maintain respect, Jones and the members of the racketeering enterprise as well as rival gangs cultivated a reputation for violence," and that Jones and members of the racketeering enterprise "committed conspicuous acts of violence to maintain respect and protected their drug-trafficking turf." *Id.*

The murder at issue occurred at a social event. Jones shot a man named Lawrence, because Lawrence disrespected Jones' girlfriend. *Jones,* at 84-85.

Based on that record, the court concluded that there was more than sufficient evidence from which to conclude that Jones was guilty of a state law murder offense, but could not conclude that there was evidence from which a reasonable fact finder could find that Jones's general purpose in murdering Lawrence was to maintain or increase his position in the racketeering enterprise. *Id* at 85. The court concluded that "the government has failed to prove that Jones, in responding to Lawrence's personal acts of disrespect, was "expected to act based on the threat posed to the racketeering enterprise and that failure to do so would have undermined his position within that racketeering enterprise." *Id.*at 87.

The court also noted that "there is no evidence to support the government's strained inference that Jones had a generalized need to use violence in response to all acts of disrespect- regardless of whether the disrespect was directed at him personally or was related to the affairs of the Enterprise- in order to maintain his position in the Enterprise or to further the Enterprise's objectives. ***Without such evidence, this inference is based only on speculation.***" *Id.* at 88. (Emphasis added.) In this respect, *Jones* is very similar to this case.

4.        **THERE IS A FATAL VARIANCE BETWEEN THE RACKETEERING ENERPRISE ALLEGATION OF THE INDICTMENT AND THE EVIDENCE PRESENTED AT TRIAL**

If one racketeering enterprise is alleged and more than one is proved, the resulting variance is fatal if prejudice is shown. *Kotteakos v. United States,* 328 US 750 (1946) (the government was not authorized to string together eight or more separate conspiracies); *United States v. Bertolotti,* 529 F2d 149 (2nd Cir. 1975) (prejudice where the variance caused improper joinder).

A racketeering enterprise is defined in significant part by "relationships among those associated with the racketeering enterprise." *Boyle v. United States,* 556 US 938, 946 (2009). There must also be evidence of continuity in organizational structure. *Owinga v. Bennistar 419 Plan Services, Inc.* 649 F3d 783, 794 (6th Cir. 2012) ("An association-in-fact racketeering enterprise 'require[s] a certain amount of organizational structure which eliminates simple conspiracies from the Act's reach.", citing "*VanDen Broeck v. Common Point Mortg. Co.,* 210 F3d 696, 699 (6th Cir. 2000). Applying these principles to the trial evidence, it is clear there were multiple enterprises or conspiracies, not the overarching single one alleged in the indictment.

There should be no question that the Defendant is prejudiced by evidence of multiple racketeering enterprises or conspiracies. Evidence of numerous violent acts, rap songs, and admissions by co-defendants were admitted in evidence on the premise that there was a single racketeering enterprise, but there was no one, but several.

## IV.    MURDER OF CLEO MCDOUGAL

Count Two charges that Brown murdered Cleo McDougal "for the purpose of maintaining or increasing his position in the Enterprise".

## A.    THIS COURT SHOULD GRANT BROWN AN ACQUITTAL PURSUANT TO FRCRP RULE 29(c) ON COUNT TWO BECAUSE OF INSUFFICIENT EVIDENCE

According to the history of §1959(a), the VCAR motive element was intended "specifically to compliment RICO by targeting criminal enterprise 'members' who commit violent crimes 'as an aspect of membership in the enterprise.' See Rep No. 225 at 306, reprinted in 1984 USCCAN at 3486." *United States v. Polanco,* 145 F3d 536, 540 (2nd Cir. 1998). It was therefore, the government's burden at Brown's trial, unmet by the prosecution, to establish that the defendant committed the McDougal homicide because he knew it was expected of him by his membership in the alleged enterprise in order to maintain or increase his position.

In order to establish this element, the government was required to prove that the "Defendant's general purpose in committing the crime of violence was to maintain or increase his position in the enterprise." *United States v. Thai,* 29 F3d 785, 817 (2nd Cir. 1994).

On the one hand, there may be sufficient evidence to fine this element if "the jury could properly infer that the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise of that he committed it in furtherance of that membership." *United States v. Concepcion,* 983 F2d 369, 381 (2nd Cir. 1993).

On the other hand, testimony that only established a mercenary motive is insufficient. *United v. Thai,* 29 F3d at 818.

In *Thai*, the court held the evidence was insufficient to allow the jury to conclude that the defendant conspired to commit an assault on individuals at the Pho Bang Restaurant "for the purpose of maintaining and increasing position in the BORN TO KILL, an enterprise engaged in racketeering activity." *Id.* at 817. The only relevant trial testimony was that Thai wanted to bomb the Pho Bang to get paid. There was no evidence that it was his intent to use a bomb as a response to a threat against his RICO enterprise, or to his position as its leader. There was no evidence he believed that his actions were expected of him as the enterprise leader. The court

found there was no evidence from which the jury could have concluded that Thai's motive was "other than purely mercenary." *Id.* at 818.

The court in *Thai* also rejected a government argument that Thai's conduct was part of the criminal organization's affairs. In its view, the evidence was less than sufficient even to support an inference there was a VCAR motive:

> While a defendant's §1959 conviction is to be affirmed if a motivation to maintain or increase his position may be reasonably inferred from the evidence, such a conviction may not be affirmed where, as here, that inference is based on no more than guesswork.

*Thai,* 29 F3d at 818-19.

A "motive" or "motivation" is commonly understood to mean a "factor of circumstance that induces a person to act in a particular way." The OXFORD ENCYCLOPEDIC ENGLISH DICTIONARY, Oxford University Press, 1991. Evidence of motive by definition concerns the defendant's state of mind before the event, not reactions of others to the event after the fact. Any possible suggestion by the government that a jury could conclude that Brown had a motive to enhance his reputation within the enterprise would be nothing more than a proposal to engage in bald speculation. An inference upon which proof beyond a reasonable doubt can be found requires reason based upon fact, not on speculation.

Because there was no evidence of a VCAR motive, this Court should grant Brown an acquittal on Count Two.

**B.    THIS COURT SHOULD GRANT BROWN A JUDGMENT OF ACQUITTAL ON COUNT TWO, CHARGING A VIOLATION OF 18 U.S.C. §1959(A), VCAR, BECAUSE THE STATUTE IS UNCONSTITUTIONAL AS APPLIED IN THIS CASE.**

**a. The VCAR Statue is Unconstitutional As Applied**

The use of the VCAR statute is Count Two, to allege that Brown murdered Cleo McDougal, to maintain or increase his status in a RICO enterprise, is unconstitutional as applied in this case. *Ada v. Guam Soc'y of Obs. and Gyn.,* 506 US 1011, 1012 (1992) (Scalia dissenting), *denying cert.* to 962 F2d 1366 (9th Cir. 1992). It fails to "define [a] criminal offense with sufficient definiteness so that ordinary people understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v. Barnes,* 890 F2d 545, 552 (1st Cir. 1989), citing *Kolender v. Lawson,* 461 US 352, 357 (1983). It fails to give notice that is applies to the facts of this case.

The application of VCAR along with RICO enterprise as defined in *Boyle v. United States,* 556 US 938, 946 (2009), to make Brown criminally responsible for a state murder offense, based on the VCAR element that only requires proof that his motive was to increase his status in a loosely defined RICO enterprise-one that requires no status-in unconstitutional in this case.

Count Two alleges that the murder of Cleo McDougal in violation of state law (MCL 750.316(1)) was a violation of federal law because it was related to the RICO enterprise alleged in Count One. There is no allegation and there was no evidence at trial that the McDougal homicide itself had **any** relationship to interstate commerce that could bring it within the scope of federal powers to criminalize local conduct. The VCAR statute language relied on by the prosecution to make this quintessential local offense a federal crime subjecting Brown to life without parole in a federal prison, is that the McDougal homicide was done only for the purpose of "maintaining or increasing [Brown's] position in an enterprise." §1959(a). It is that element which is the thin thread that ties it to a RICO enterprise and interstate commerce so as to purportedly bring it within the scope of the federal statute.

The prosecution has relied on the widest possible application of the RICO enterprise element, 18 U.S.C. §1961(4)[1] (an association-in-fact enterprise need only have the following features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose. *Boyle,* 556 US 938, 946 (2009)). As explained in *Boyle, supra,* the court has liberally interpreted the statute, "to effectuate its remedial purposes." It acknowledged that "[t]he statute does not specifically define the outer boundaries of the 'enterprise' concept but states that the [enterprise] term 'includes any individual partnership, corporation, association or other legal entity, and any union or group of individuals associated-in-fact, although not a legal entity." 556 US at 944. It further acknowledged that the term "enterprise" has "a wide reach," and that "the very concept of an association-in-fact is expansive."

In common terms then, there is nothing in the language of either the VCAR motive element or RICO definition of enterprise as interpreted in *Boyle*, that provides notice of the kind required by the constitution that a street crime, the homicide of Cleo McDougal, based on the facts presented in Brown's trial, comes within their scope.

### b.     Due Process Requires Fair Notice of What Constitutes a Crime

The Due Process Clause of the Fifth and Fourteenth Amendments requires a measure of specificity in criminal statutes. See, e.g., *Giaccio v. Pennsylvania,* 382 US 399, 402-03 (1966). A criminal law that does not provide fair notice of what it forbids "violates the first

---

[1] 1961(4) provides that: "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." The VCAR statute, 18 U.S.C. §1959 uses the enterprise term to make violent acts of the kind listed there (murder, kidnapping, etc.) federal offenses. *United States v. Garcia*, 68 F Supp 2d 802, 809 (ED MI, 1999). According to the statute, the act must be connected to the enterprise either by payment from the enterprise of by a purpose to gain entry or to increase status in the enterprise. Any possible relationship of a crime of violence to an enterprise by definition becomes more difficult to discern as the contours of the enterprise ebbs from a defined entity such as a union or partnership to a structure less association-in-fact. This is particularly so where the claimed relationship between the two is that the violent act was committed for the purpose of "maintaining or increasing position in the enterprise." §19599(a).

essential of due process of law." *Connally v. General Constr. Co.,* 269 US 385, 391 (1926). "The vice of vagueness in criminal statues is the treachery they conceal either in determining what persons are included or what acts are prohibited. Words which are vague or fluid may be as much of a trap for the innocent as the ancient laws of Caligula." *United States v. Cardiff,* 344 US 174, 176 (1952) (citations omitted); see also *Papachristou v. City of Jacksonville,* 405 US 156, 162 (1972). ("Living under a rule of law entails various suppositions, one of which is that '[all persons] are entitles to be informed as to what the State commands or forbids.'") (Quoting *Lanzetta v. New Jersey,* 306 US 451, 453 (1939)).

A law is void for vagueness if it suffers from either of the following defects: first, it "may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits;" alternatively, it "may authorize and even encourage arbitrary and discriminatory enforcement." *Chicago v. Morales,* 527 US 41, 56 (1999) (citing *Kolender v. Lawson,* 461 US 352, 357 (1982) (establishing the current version of the two-prong test)); see also *United States v. Rybicki,* 354 F3d 124, 129 (2nd Cir. 2003). In the absence of First Amendment implications, a void-for-vagueness challenge is as applied; the statute is assessed for vagueness only "in light of the specific facts of the case at hand and not with regard to [its] facial validity." *Rybicki,* 354 F3d at 129 (quoting *United States v. Nadi,* 996 F2d 548, 550 (2nd Cir. 1993)). "One whose conduct is clearly proscribed by the statute cannot successfully challenge it for vagueness." *Id.*

When the application of criminal statutes results in these concerns, the statutes are unconstitutional as applied. When application of the statutes permits the prosecutor to make a local crime a federal capital offense, it is also unconstitutional as applied. The prosecution's application of RICO (enterprise) and VCAR in tandem exceeds the limits of their use intended by Congress.

C.    **THE VCAR STATUTE IS UNCONSTITUTIONAL AS APPLIED HERE BECAUSE IT EXCEEDS THE SCOPE OF THE COMMERCE POWER**

Under *United States v. Lopez,* 524 US 549 (1995), *United States v. Morrison,* 529 US 598 (2000), *Jones v. United States,* 529 US 848 (2000), and *Gonzales v. Raich,* 545 US 1 (2005), 18 U.S.C. §1959, as applied in this case, is unconstitutional because it exceeds the scope of the commerce power. There was no allegation in the indictment and no evidence at trial of any effect on interstate commerce by the shooting alleged in Count 2 of the Indictment. *Waucaush v. United States,* 380 F3d 251, 256 (6th Cir. 2004)(The court determined that RICO exceeded Congress's commerce power in the context of an as-applied challenge by a defendant engaged in non-economic activity).

In *United States v. Garcia,* 68 F Supp 2d 802 (ED MI, 1999), the lower court case from which *Wauchaush* arose, the district court dismissed the VCAR counts of an indictment because

> the jurisdictional facts alleged by the government are insufficient to withstand an as-applied challenge to the federal statute which prohibits violent crimes in aid of racketeering activity, 18 U.S.C. §1959. The application of VCAR to Defendant Garcia exceeds Congress' power under the Commerce Clause.

*Id.* at 813.

The court in *Garcia* went on to find that even if the government could prove that the defendant murdered the victim in order to "enhance power and authority of [his gang] and his role within it," the alleged murder was-as it is in Brown's case- a "street crime" if committed, only a local offense. As the court concluded in *Garcia*, "That this enterprise may have the de minimums impact on interstate commerce required to sustain federal jurisdiction under RICO, does not support the conclusion that one can bootstrap a purely local street crime into a federal capital offense. A stronger and more substantial connection or impact on interstate commerce is required." *Id.* at 811.

Less is presented by the facts of Brown's case than in *Garcia*. There is no evidence of any relationship of the McDougal shooting to interstate commerce. The mere suggestion that the exercise of federal power over the state's to prosecute a local crime is sufficient because a *Boyle* enterprise has some connection to interstate commerce, fails when they theory of that connection is nothing more than an opinion of the government that Brown was more feared after the shooting than before.

A.     **The Application of the VCAR Statute Exceeds the Authority of Congress to Make a Local Conduct a Federal Offense.**

The powers of Congress are strictly defined and are specifically enumerated in Article I, §8 of the United States Constitution. Congress has no general "police power", such that exercised by the States. *Engle v. Isaac,* 456 US 107, 128 (1982) ("States possess primary authority for defining and enforcing the criminal law."); *United States v. Bass,* 404 US 336, 349 (1971)("Congress has traditionally been reluctant to define as a federal crime conduct readily denounced as criminal by the States…[W]e will not be quick to assume that Congress has meant to effect a significant change in the sensitive relation between federal and state criminal jurisdiction."); *Alden v. Maine,* 527 US 706 (1999)(Although the Constitution grants broad powers to Congress, our federalism required that Congress treat the States in a manner consistent with their status as residuary sovereigns and joint participants in the governance of the Nation.").

Given the absence of any general federal police power, most federal criminal statutes, as well as many other federal statutes of a regulatory nature, have been adopted under the auspices of the Commerce Clause of the United States Constitution, Article I, §8, cl. 3, which provides:

> The Congress shall have power…[t]p regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes[.]

The scope of the Commerce Clause, over the course of the last 60 years, has been both expanded and contracted to encompass a broad range of commercial activity, with the settled caveat that the activity, at the very least, have some effect on interstate commerce that could be categorized as something more than "trivial". *Wickard v. Filbum,* 317 US 111, 127 (1942). The Supreme Court has since qualified this broad holding, and, in *United States v. Lopez,* 514 US 549 (1995), *United States v. Morrison,* 529 US 598 (2000), and *Jones v. United States,* 529 US 848 (2000), clarified the limits under which the Federal Government may exercise its power under the Commerce Clause.

In *Lopez,* the Supreme Court held the Gun-Free School Zones Act, 18 U.S.C. §922(q), unconstitutional, and, found, specifically, that the Commerce Clause provides Congress the power to regulate three categories of activity. First, Congress may "regulate the use of the channels of interstate commerce." *Id.* at 558-59. Second, Congress may "regulate and protect the instrumentalities of interstate commerce, or persons of things in interstate commerce." *Id.* Finally, Congress may regulate "those activities that substantially affect interstate commerce." *Id.* at 557. As to this third category, the Supreme Court has not set out any bright-line test to determine what types of activities, as a rule, do or do not "substantially affect" interstate commerce. The clear import of *Lopez,* however, is that for Congress to regulate an activity as "substantially affecting" interstate commerce, the activity in question must be economic or commercial in nature.[2] In short, the federal commerce power extends to the regulation of the channels and instrumentalities of interstate commerce, regardless of the type of activity being

---

[2] For instance, in *Lopez,* the Court held that "we have upheld a wide variety of congressional Acts regulating intrastate *economic* activity where we have concluded that the activity substantially affected interstate commerce," 514 US at 557, and "[w]here *economic* activity substantially affects interstate commerce, legislation regulating that activity will be sustained," *Id.* at 559, and, "[t]he possession of a gun in a local school zone is in no sense an *economic* activity that might, through repetition elsewhere, substantially affect interstate commerce." *Id.* at 566. (Emphasis added).

regulated, and to economic or commercial activity that "substantially affects" interstate commerce.

Where the alleged violent act is plainly non-economic in nature and bears only the kind of attenuated relationship presented here by a theory of use of a murder to gain or maintain respect in an enterprise that requires no status, the use of the statue exceeds the scope of federal authority to make a local crime a federal offense.

## CONCLUSION

Regarding Count One, the RICO conspiracy, the government theory that multiple unrelated incidents occurring over the course of fifteen years amount to a racketeering enterprise is strained and speculative, but unsupported by the evidence. So too is the individual VCAR count. The evidence is insufficient to go to the jury on RICO conspiracy and VCAR. The Defendant should be granted acquittals on Count One and the VCAR count in Count Two, Count Three, Count Twenty-Five, Count Twenty-Six, Count Twenty-Seven, and Count Thirty-Two.

Respectfully submitted,

/s/ James L. Feinberg
James L. Feinberg (P13341)
28411 Northwestern Highway
Suite 875
Southfield, MI 48034
(248) 353-0600
jlfdefense@mindspring.com

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on August 15, 2018, she electronically filed: Defendant's MOTION AND INCORPORATED MEMORANDUM OF LAW FOR JUDGMENT OF ACQUITTAL PURSUANT TO FRCRP RULE 29(A) with the United States District Court Eastern District of Michigan CM/ECF electronic filing system sending notice to all attorneys of record.

/s/ Amelia Crosby
Amelia Crosby, Paralegal